IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| YOANDRY RAMIREZ-GAVILAN, | § § | |
| Petitioner, | § § | |
| v. | § § | 1:25-CV-2052-RP |
| CHARLOTTE COLLINS, *Warden at T. Don Hutto Detention Center*, et al., | § § § § | |
| Respondents. | § § | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Yoandry Ramirez-Gavilan's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, filed on December 15, 2025. (Dkt. 1). On December 18, 2025, pursuant to 28 U.S.C. § 2243, the Court ordered Respondents to show cause as to why the petition should not be granted. (Dkt. 3). On December 22, 2025, Respondents Pam Bondi, Kristi Noem, Todd M. Lyons, and Sylvester Ortega[1] (together, "Respondents") timely filed a response in opposition. (Dkt. 4). On December 23, 2025, the Court ordered a reply brief from Petitioner, which Petitioner timely filed on December 29, 2025. (Dkt. 5). On January 7, 2026, the undersigned[2] held a hearing on the Petition and heard argument from Petitioner and Respondents. Having considered the parties' arguments, the evidence presented, and the relevant law, the Court will grant in part and deny in part Petitioner's Petition for Writ of Habeas Corpus.

---

[1] All individual respondents were sued in their official capacities. The Response is filed only on behalf of the federal employees in this action. (Dkt. 4, at 1 n.1).
[2] The hearing in this case was held in front of United States Senior District Judge David A. Ezra because Judge Robert Pitman was out of the district; Judge Ezra is also issuing this opinion, but the case otherwise remains with Judge Pitman.

# I. BACKGROUND

Petitioner is a Cuban national who entered the United States without inspection on May 2, 2022 and was apprehended by Border Patrol agents near the U.S.-Mexico border on that same day. (Pet., Dkt. 1, at 4). Two days after Petitioner was taken into custody, on May 4, 2022, Petitioner was served with a Warrant of Arrest/Notice to Appear ("NTA"). (*Id.* at 48). Petitioner's NTA states that, after arrival, he was "not then admitted or paroled after inspection by an Immigration Officer." (*Id.*). The next day, May 5, 2022, he was released under his own recognizance, seemingly as a form of "conditional parole" under 8 U.S.C. § 1226 (Section 236 of the Immigration and Nationality Act ("INA")). (*Id.* at 54).

Petitioner then resided in the United States for roughly three years. (*Id.* at 4). On July 15, 2025, Petitioner was stopped in a routine traffic stop and arrested by U.S. Immigration and Customs Enforcement ("ICE"), despite being charged with no criminal violations. (*Id.*). Petitioner's parole was never formally revoked.[3]

In August 2025, Petitioner filed a bond application with the Immigration Court, which was denied for lack of jurisdiction on the basis that Petitioner was subject to mandatory detention under 8 U.S.C. 1225. (*Id.* at 4, 117). Petitioner remains detained at the T. Don Hutto Detention Center. (*Id.* at 7).

Petitioner has a pending application for asylum and has also applied to adjust his immigration status under the Cuban Adjustment Act ("CAA"). (*Id.* at 5–6). On November 3, 2025, the Immigration Judge in his case denied his motion to adjust status on the basis that he had failed to show that he had been "paroled" as required by the CAA—which the Board of Immigration Appeals ("BIA") interprets as requiring "humanitarian" parole under 8 U.S.C. § 1182(d)(5) and not

---

[3] At the January 7, 2026 hearing on Petitioner's Petition, when counsel for Respondents was asked if Petitioner's parole had been revoked, he responded that Petitioner was never paroled, in the government's view, and therefore that his parole had not been revoked.

2

conditional parole under 8 U.S.C. § 1226—and has since refused to hear arguments regarding his adjustment of status. (*Id.*).

Petitioner challenges his detention through a writ of habeas corpus under 28 U.S.C. § 2241. (Dkt. 1). Petitioner brings claims that his ongoing detention without bond is unlawful in violation of his Fifth Amendment Due Process rights, the INA, the Suspension Clause, and the Administrative Procedure Act ("APA"). (*Id.* at 9, 36–41). Petitioner asks the Court to, among providing other relief, (1) order either his release or an immediate bond hearing and (2) declare that he was humanitarianly paroled into the United States as a matter of law and order the Immigration Judge to adjudicate his application for status adjustment under the CAA. (*Id.* at 41–42).

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Respondents suggest that certain provisions of the INA strip this Court of jurisdiction to determine whether Petitioner is wrongfully detained. (Resp., Dkt. 4, at 7–8). Separately, but invoking one of the same provisions, Respondents suggest that the nature of Petitioner's parole is also a question beyond this Court's jurisdiction. (*Id.* at 2–3). The Court will address both questions of jurisdiction in turn.

Respondents assert 8 U.S.C §§ 1252(b)(4),[4] (b)(9), and (g) as potential bars to this Court's jurisdiction to determine if Petitioner's detention under the INA's mandatory detention provision is unlawful. (Resp., Dkt. 4, at 7−8). The Court evaluates each below.

---

[4] Respondents cite 8 U.S.C. § 1225(b)(4) for the proposition that "even if the alien claims he is not appropriately categorized as an applicant for admission subject to § 1225(b), such a challenge must be raised before an immigration judge in removal proceedings." (Resp., Dkt. 4, at 7). Section 1225(b)(4) deals with review of favorable admission decisions made by immigration officers when inspecting arriving noncitizens; the Court presumes that Respondents intended to refer to 8 U.S.C. § 1252(b)(4), which discussed the scope and standard of review for orders of removal, and will rule on that basis and refer to § 1252(b)(4) in this opinion. However, if Respondents intended to refer to § 1225(b)(4) as a jurisdictional bar to Petitioner's claims, the Court finds nothing in that subsection that bars its jurisdiction here.

3

First, 8 U.S.C. § 1252(b)(9) channels "[j]udicial review of all questions of law . . . including interpretation of constitutional and statutory provisions, arising from any action taken . . . to remove an alien from the United States" to the appropriate federal court of appeals—here, the Fifth Circuit. However, the Supreme Court has indicated that where a Petitioner is not "asking for review of an order of removal," "challenging the decision to detain them in the first place or seek removal," or "challenging any part of the process by which their removability will be determined," § 1252(b)(9) is not a jurisdictional bar. *Nielsen v. Preap*, 586 U.S. 392, 402 (2019). Petitioner's challenge to his continued detention without bond as unlawful under the INA, APA, and U.S. Constitution does not fall into any of those categories. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) ("§ 1252(b)(9) does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined."). Rather than challenging his removal proceedings, Petitioner challenges the lawfulness of his detention without bond during the pendency of his removal proceedings. Thus, § 1252(b)(9) poses no bar.[5]

---

[5] The Court is aware of the Third Circuit's recent decision in *Khalil v. President, United States of America*, Nos. 25-2162 & 25-2357 (3d Cir. Jan. 15, 2026). There, a divided panel of the Third Circuit found that § 1252(b)(9) was a jurisdictional bar to a district court considering claims that included unlawful detention. *Id.*, slip op. 22–33. Critically, however, the Third Circuit's reasoning centered on the fact that the petitioner—even in his detention arguments—was challenging the lawfulness of the decision to deport him and the underlying question of his removability. As the majority explained when addressing the petitioner's detention claims, "[t]hough [petitioner] also challenges his detention, his arguments against it are identical to his arguments against removal." *Id.* at 28. As a result, the Court concluded that "addressing any of those claims would require deciding whether removing [petitioner] would be unlawful—the very issue decided through the [petition for further review] process." *Id.* at 26. The Third Circuit clarified that "[t]o be sure, some claims can be detention-specific," just not claims that "repackage[] [petitioner's] challenges to his removal." *Id.* at 28. In fact, the Third Circuit specifically distinguished its decision in *Khalil* from cases where "petitioners were not 'challenging the decision to detain them' but only the bond procedures used" and where petitioners "challenged only the length of confinement without a bond hearing, a claim that does not get channeled into the PFR review process." *Id.* at 32–33. Here, Petitioner is not challenging the decision to seek his removal nor asking the Court to decide his removability. Instead, like the cases the Third Circuit specifically distinguished, the question here is detention-specific: only whether, as a matter of law, Petitioner falls under the mandatory detention authority of § 1225 while his removal proceedings are ongoing.

4

Second, to the extent that Respondents invoke § 1252(b)(4), that section fails to assert a valid jurisdictional bar for the same reasons. Under 8 U.S.C. § 1252, titled "Judicial Review of Orders of Removal," Subsection (a)(1) indicates that "[j]udicial review of a final order of removal . . . is governed only by chapter 158 of Title 28, except as provided in subsection (b)." *See* 8 U.S.C. § 1252(a)(1). Section 1252(b) generally, and (b)(4) specifically, elaborates on "requirements for review of orders of removal" as set forth in Subsection (a)(1). Because Petitioner does not assert a challenge to an order of removal, nothing in that subsection bars Petitioner from seeking relief from his continued detention in this case.

Third, 8 U.S.C. § 1252(g)—unless other laws provide jurisdiction—strips all courts of jurisdiction to hear "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). However, as interpreted by the Supreme Court, this Section applies "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). Thus, § 1252(g) does not apply to all claims with any relationship to deportation proceedings. Because Petitioner challenges the lawfulness of his continued detention during the pendency of his removal proceedings, it is not a challenge to one of the "three discrete events along the road to deportation" to which § 1252(g) applies. *Reno*, 525 U.S. at 482. As such, Respondents cannot assert a jurisdictional bar to the instant petition on the question of Petitioner's confinement.[6]

---

[6] The Court also notes that, to the extent an administrative exhaustion requirement would normally apply in this situation, "[b]ecause Respondents argue the detention of Petitioner is mandatory, claiming no one, including the [immigration judge], can review the detention issue, any attempt to require Petitioner to exhaust any administrative remedies [would be] futile." *See Lorenzo C. P., v. Noem*, No. 1:25-CV-181, 2025 WL 3684859, at *5 (S.D. Tex. Oct. 31, 2025); *see also Shi v. Lyons*, No. 1:25-CV-274, -- F. Supp. 3d --, 2025 WL 3637288, at *4 n.6 (S.D. Tex. Dec. 12, 2025) (holding that administrative exhaustion would be futile in light of *Matter of Yajure Hurtado*).

Respondents also raise § 1252(g) as a bar to the Court's consideration of Petitioner's parole, asserting that the question of whether Petitioner was humanitarianly or conditionally paroled is a "legal conclusion" of an immigration judge that is a "decision or action" to "commence proceedings, adjudicate cases, or execute removal orders." (Resp., Dkt. 4, at 2–3). Moreover, at the hearing, counsel for Respondents also asserted that the Court's reach in ruling on a writ of habeas corpus is limited to only the question of release, citing *DHS v. Thuraissigiam*, 591 U.S. 103, 118–19 (2020). While it is not entirely clear if that suggestion—that the Court's determination of the nature of Petitioner's parole is a separate consideration beyond the appropriate scope of habeas proceedings—would be a jurisdictional issue or simply a bar to some forms of relief, the Court will address it here alongside § 1252(g).

Put simply, to determine if Petitioner is currently being unlawfully confined, the Court must necessarily determine Petitioner's current status under the law. Petitioner's current status is intertwined with his past parole: as discussed further below, whether Petitioner was humanitarianly or conditionally paroled has clear implications for whether he can currently be detained under the INA's mandatory detention provisions. Moreover, in considering Petitioner's parole, the Court is merely determining the nature, as a matter of law, of that parole—asking what happened when Petitioner was released, based on the statutory language and DHS's documentation. The legal nature of Petitioner's parole is unequivocally within the Court's competency to determine. *Thuraissigiam* does not bar the Court from examining Petitioner's legal status or declaring the legal nature—or legal implication—of an agency action.

Nor does § 1252(g) bar jurisdiction here. The nature of DHS's action in 2022 is not a "conclusion" of the Immigration Judge that is shielded from judicial view. In determining what, as a matter of law, occurred when Petitioner was released in 2022, the Court is not reviewing an agency decision to commence proceedings, adjudicate a case, or execute a removal order. The Court is

6

simply interpreting the legal implications of a past agency action against the backdrop of the statute. The Court will therefore proceed to consider both whether Petitioner's current confinement is lawful and the related question of the nature of his parole in 2022.

### B.  Parole

First, the Court considers Petitioner's 2022 release. The INA allows for two forms of "parole." *Texas v. Biden*, 20 F.4th 928, 947 (5th Cir. 2021), *as revised* (Dec. 21, 2021), *rev'd on other grounds and remanded*, 597 U.S. 785, 142 S. Ct. 2528, 213 L. Ed. 2d 956 (2022). One, "conditional parole" is provided for by 8 U.S.C. § 1226 (INA § 236). Conditional parole is a form of release available after a warrant/NTA has been issued and a noncitizen is in removal proceedings. *Id.*; *see also* 8 U.S.C. § 1226(a). The other, "humanitarian parole," is provided for by 8 U.S.C. § 1182(d)(5)(A) (INA § 212(d)(5)(A)). Humanitarian parole is the only form of release available under the INA for an "arriving" noncitizen who is subject to mandatory detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 283 (2018) ("There is also a specific provision authorizing temporary parole from § 1225(b) detention "for urgent humanitarian reasons or significant public benefit," § 1182(d)(5)(A) . . . That express exception implies that there are no other circumstances under which aliens detained under § 1225(b) may be released.").

The form of parole that Petitioner received after his arrival and initial apprehension by Border Patrol in 2022 is relevant to his current status in at least two ways. First, the form of parole he was granted may affect whether he is currently properly held under the INA's mandatory detention provision, 8 U.S.C. § 1225. Second, his past parole affects whether Petitioner is eligible to adjust his status under the CAA, because, as mentioned above, the BIA's position is that only individuals who were humanitarianly paroled into the country are eligible for CAA status adjustment.

Petitioner asserts that, as a matter of law, his release into the country in 2022 must have been humanitarian parole. (Pet., Dkt. 1, at 30–35). At its core, this assertion rests on the idea that humanitarian parole is the only form of release available for an "arriving" "applicant for admission" who is being held under § 1225. (*Id.*); *see also Jennings*, 583 U.S. at 283.

However, it appears that DHS, after holding Petitioner for roughly two days, issued an NTA and shifted him into removal proceedings, and then DHS itself treated him no longer as an "arriving" noncitizen subject to § 1225 but instead as a removable noncitizen present in the country, governed by § 1226. This is apparent from DHS's documentation at the time, which asserts that DHS inspected but did not parole Petitioner, then issued an NTA, then released Petitioner on his own recognizance under § 1226. (Pet., Dkt. 1, at 48–54).

The conclusion that this was DHS's approach in 2022 is supported by past cases that squarely address DHS's approach to situations like Petitioner's. Take, for example, the facts of *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007), which the Fifth Circuit has cited approvingly for the meaning of conditional and humanitarian parole. *See Texas v. Biden*, 20 F.4th at 995. There, the petitioner was apprehended while entering or shortly after having entered the United States. *Ortega-Cervantes*, 501 F.3d at 1112; *see also* Opening Brief for Petitioner at 10, *Ortega-Cervantes*, 501 F.3d 1111 (No. 05-70605) ("When Mr. Cervantes was being smuggled into the United States on June 8, 2002, he was apprehended by the border patrol."). Later, as here, the petitioner was issued an NTA charging him as removable as having unlawfully entered the country. *Compare Ortega-Cervantes*, 501 F.3d at 1112 *with* (Pet., Dkt. 1, at 48). The petitioner in *Ortega-Cervantes* was then released on a Form 1-220A, as was Petitioner here. *Compare Ortega-Cervantes*, 501 F.3d at 1112 *with* (Pet., Dkt. 1, at 54). Although for different reasons than Petitioner here, the petitioner in *Ortega-Cervantes* similarly asserted that his parole should have been considered humanitarian parole under § 1182(d)(5)(A). *Ortega-Cervantes*, 501 F.3d at 1115. However, the Ninth Circuit disagreed. Instead, it concluded that

8

Petitioner was "not an 'arriving alien' within the meaning of the regulations because he was apprehended inside the United States after crossing the border illegally," despite having just entered, and therefore he was not subject to 8 U.S.C. § 1225 (INA § 235). *Id.* at 1116. As a result, he was not necessarily paroled under § 1182 (the only route for parole for someone subject to § 1225)—and instead could properly have been paroled under § 1226 (INA § 236), which is the approach it appeared the government had taken in that case. *Id.* The Ninth Circuit therefore held that Petitioner had been conditionally paroled under § 1226. *Id.*

Given the parallel facts here, the Court concludes that Petitioner was likewise conditionally paroled under § 1226 and therefore will not at this time further address Petitioner's assertion that he is eligible for status adjustment under the CAA.[7] However, as discussed further below, Petitioner's past parole does mean that he cannot now be subject to mandatory detention—in part because Respondents cannot now change how they previously categorized Petitioner. In fact, the practice seen both in this case and in *Ortega-Cervantez* of treating individuals who had been detained shortly after entered the United States as subject to § 1226—and not, as the Ninth Circuit explained, as "arriving aliens"—strongly emphasizes the dramatic nature of the recent change in Respondents' position on the relative roles of § 1225 and § 1226.

---

[7] However, if Respondents continue to assert that Petitioner was and is properly described under § 1225, the only form of release available to him in 2022 was humanitarian parole. Under those circumstances, it would appear that, as a matter of law, the most accurate way to describe the action that DHS took when it detained Petitioner, individually considered his case, and then released him into the country was that DHS humanitarianly paroled him into the United States—because that was the only route available for DHS to release Petitioner if he was held under § 1225. Another way to say this is that Respondents cannot have their cake and eat it too: either Petitioner was granted conditional parole in 2022, in which case he must not have been mandatorily detained then and cannot be mandatorily detained now, or Petitioner was mandatorily detained under § 1225 in 2022, in which case he must have received humanitarian parole to be released. Humanitarian parole follows from mandatory detention, and discretionary detention follows from conditional parole. The Court further notes, however, that under the scenario where Respondents continue to assert that Petitioner was and is described by § 1225 (and therefore was humanitarianly paroled), by Respondents' counsel's own admission at the hearing, Petitioner's parole was never revoked—so even if Petitioner was mandatorily detained in 2022, he is not properly returned to that status now and therefore is still being held in violation of the INA—and must be released.

9

### C.  Current Detention

The Court now turns to considering whether Petitioner is currently being lawfully detained under the INA's mandatory detention provision, 8 U.S.C. § 1225. As a threshold matter, the Court notes that regardless of the form of parole that Petitioner received in 2022, Respondents have not suggested that there was any process undertaken to revoke that parole. However, the Court does not need to decide if that lack of process was wrongful to determine that Petitioner is not properly subject to § 1225 and therefore is being held in violation of the INA. The illegality of his detention is apparent for at least three reasons: (1) the government's past classification of Petitioner as subject to § 1226, (2) the Immigration Judge's reasoning in finding that the Immigration Judge lacked jurisdiction to consider Petitioner's bond request, and (3) perhaps most simply, the admission at the January 7, 2026 hearing by counsel for Respondents that, under this Court's interpretation of the relevant roles of § 1225 and § 1226, as established in past cases, Petitioner is subject only to discretionary detention.

First, as discussed above, the government has already treated Petitioner as subject to § 1226 when they paroled him under that provision—a form of parole that would not have been possible if he was being detained subject to § 1225. That alone would be sufficient to say that Petitioner is wrongfully detained under § 1225 now.

Second, the Immigration Judge considering Petitioner's request for a bond hearing denied that request by simply stating that the Immigration Judge lacked jurisdiction under *Matter of Q. Li* 29 I. & N. Dec. 66, 70 (BIA 2025). (Pet., Dkt. 1, at 117). However, *Q. Li* describes a different scenario to Petitioner's. That case considered an individual who was held under § 1225(b) and humanitarianly paroled under 8 U.S.C. § 1182(d)(5). The BIA concluded that "an alien detained under section 235(b) who is released from detention pursuant to a grant of parole under section 212(d)(5)(A) [8 U.S.C. 1182(d)(5)(A)], and whose grant of parole is subsequently terminated, is returned to custody

10

under section 235(b) pending the completion of removal proceedings." *Q. Li*, 29 I. & N. at 70. The BIA also noted, again, that "[t]he only exception permitting the release of aliens detained under . . . 8 U.S.C. § 1225(b), is the parole authority provided by . . . 8 U.S.C. § 1182(d)(5)(A)." *Id.* Regardless of whether the BIA was correct in its interpretation of § 1182(d)(5)(A), *Q. Li* only emphasizes that Petitioner—who, again, the government released under § 1226, not § 1182—does not fall into under the detention authority considered in that case. In fact, under § 1226(b), even if Petitioner's parole had been revoked, he would simply have been subject to re-arrest under his original warrant—and a noncitizen arrested under a warrant for removal proceedings is exactly who § 1226(a) describes as subject to discretionary, not mandatory, detention.

Third and finally, Respondents' counsel conceded at the January 7, 2026 hearing that under this Court's interpretation of mandatory and discretionary detention under the INA, Petitioner is subject to only discretionary detention. The Court has previously ruled on the scope of the INA's detention provisions. *See, e.g.*, *Ortega Munoz v. Noem*, No. 1:25-CV-1753-RP, 2025 WL 3218241 (W.D. Tex. Nov. 7, 2025); *Cardona-Lozano v. Noem*, No. 1:25-CV-1784-RP, 2025 WL 3218244 (W.D. Tex. Nov. 14, 2025).

In their Response—though not at the hearing—Respondents asserted that there is a critical distinction between §§ 1225(b)(1) and (b)(2) that makes this case distinct from the Court's past consideration of this issue. (Resp., Dkt. 4, at 3–4). However, like § 1225(b)(1)'s requirement that an "applicant for admission" be "seeking admission"—and therefore be actively arriving in the country—§ 1225(b)(2) describes either an applicant for admission who "is arriving" or who, when designated by the Attorney General, has been in the United States for less than two years. 8 U.S.C. § 1225(b)(1)(A)(ii) and (iii)(II); (b)(2)(A). After having been released into the United States for three years, Petitioner is not "arriving" and has clearly been present for more than two years. Respondent's invocation of § 1225(b)(1) therefore does not change the analysis that Petitioner is

11

subject to § 1226. Moreover, despite asserting that § 1225(b)(1) applies and changes the analysis in this case, Respondents' Response immediately thereafter repeats arguments that Respondents have made in many similar cases under § 1225(b)(2), without distinguishing between (b)(1) and (b)(2). (Resp., Dkt 4, at 4–9). The Court responds to those arguments as it has in past cases: the text, legislative history, and past agency application of § 1225 and § 1226 show individuals who have been present in the country for years and are arrested on a warrant for removal proceedings are subject only to discretionary detention. *See Cardona-Lozano*, No. 1:25-CV-1784-RP, 2025 WL 3218244 at \*3–7. As such, Petitioner cannot be lawfully detained under § 1225.

### III. CONCLUSION

The foregoing order constitutes the Court's findings of fact and conclusions of law. For the reasons discussed above, **IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **GRANTED IN PART** as follows. All relief not granted is **DENIED**.

1. Upon receipt of this order, Respondents shall <u>immediately</u> release Petitioner from custody;

2. Respondents shall release Petitioner under conditions no more restrictive than those in place prior to the detention at issue in this case;

3. As soon as is practicable, and no less than two hours before release, respondents shall notify Petitioner's counsel by email[8] of the exact location and time of Petitioner's release;

4. Respondents are enjoined from further detaining Petitioner under the asserted detention authority, 8 U.S.C. § 1225.

---

[8] Jeffrey A. Peek, federal@peeklawgroup.com

**IT IS FURTHER ORDERED** that Respondents shall provide a status report on **or before January 21, 2026**, detailing their compliance with this Order.

**SIGNED** on January 17, 2026.

_____
DAVID A. EZRA
UNITED STATES DISTRICT JUDGE